The UNITED STATES of America, Plaintiff–Appellee,

v.

Jarrett E. WOODS, Defendant–Appellant.

No. 91–1819.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1991.

Rehearing Denied Jan. 14, 1992.

Robert Udashen, Shirley Baccus–Lobel, Dallas, Tex., for Jarrett E. Woods, Jr.

Susan Greenberg and Mark A. Adler, Asst. U.S. Attys., and Marvin Collins, U.S. Atty., Dallas, Tex., for the U.S.

Before JOLLY, JONES, and E. GARZA, Circuit Judges.

PER CURIAM:

This interlocutory appeal is before the court to consider Jarrett Woods's argument that his ongoing criminal prosecution unconstitutionally places him in double jeopardy.[1] He contends that the harm he suffered as sole owner of a savings and loan association that was placed in receivership by the government amounted to a punishment for purposes of the Fifth Amendment.[2] He argues that the current

---

1. The government argues that we have no jurisdiction to hear this interlocutory criminal appeal. The government concedes, however, that interlocutory appeal of the denial of a motion to dismiss a criminal complaint for double jeopardy is permitted. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The government argues that such interlocutory appeals are allowed only to protect the defendant from a second criminal trial, and Woods has never been subjected to a first criminal trial. This argument ignores the effect of civil punishments as a means of double jeopardy, *see United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), which is the very issue raised here by Woods.

The government offers no precedent for the refusal of jurisdiction to hear an argument of double jeopardy by interlocutory appeal. The Supreme Court has made it absolutely clear that the guarantee against double jeopardy may be enforced by interlocutory appeal. The government seeks to evade this means of enforcement by arguing the merits of its substantive argument as a jurisdictional argument. In the light of *Abney,* we obviously have jurisdiction in this matter.

2. Woods owned a holding company that was the sole shareholder of Western Savings Association, an S & L, which was declared insolvent and placed in receivership by the Federal Home

prosecution, on a 37–count indictment relating to bank fraud, thus seeks to punish him for the same conduct for which he was punished by the receivership. He contends that this attempt to punish him is in violation of the Double Jeopardy Clause of the Fifth Amendment of the Constitution.

■ Woods asserts *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), as his authority for his position. According to *Halper*, the government may ordinarily pursue both civil and criminal remedies against the same defendant for the same conduct, although some such civil sanctions can trigger double jeopardy. A civil remedy is not a punishment, however, only so long as it does not serve the goals of punishment, mainly, retribution and deterrence. The court noted that this test is an objective one, and that punishment is not to be determined by the view of the defendant, to whom even remedial sanctions "carry the sting of punishment." 109 S.Ct. at 1901, n. 7.

■ Woods does not deny that placing a banking institution into receivership is done pursuant to a remedial statute. Nor does he deny that placing Western into receivership was a remedial act. Woods argues, however, that a remedial statute may enact a punishment. This argument is true so far as it goes, but his argument that receivership of his bank is a punishment against him has no basis in law.

In the first place, the receivership was directed against the corporation, not Woods. Woods points to no case that holds an action against a corporation is a punishment of the officers or shareholders for the purposes of ascertaining double jeopardy.[3] Consequently, there is no basis to consider the receivership, directed against Western, to be directed against Woods.

More importantly, however, even if we were to consider the receivership to be directed against Woods, as an alter-ego of Western, there would be no reason to find the receivership to be a punishment. Both the goal and the operation of the receivership have been to protect the United States treasury from avoidable insurance losses by assuring proper management of the thrift according to the banking regulations. *See* 12 U.S.C. section 1464(d). Moreover, Woods was on notice from the start that the benefits of federal insurance of his thrift came only with the potential burden of receivership. *See* 12 U.S.C. 1461, *et seq.* No goal or act described pursuant to this receivership was retributive, nor was any meant as a deterrent, as that word has meaning in the criminal law. The receivership was no punishment. Double jeopardy is not implicated as relates to the pending criminal prosecution.

The denial of the motion to dismiss the indictment by the district court is therefore

AFFIRMED.

Loan Bank Board in 1986. The circumstances of that insolvency and receivership are described in *Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400, 1403 (5th Cir.1987) *cert. denied* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988).

**3.** To illustrate this distinction, we note that in *United States v. WRW Corp.*, 731 F.Supp. 237 (E.D.Ky.1989), the government pursued shareholders to personally pay a fine imposed on their corporation. The shareholders had already been convicted of a conspiracy related to the corporate misdeeds which brought on the fine. The court held that the fine might have been a punishment of the shareholders but was not, because the fine was not unreasonably related to the government's expense in enforcing the mining law against the corporation. Unlike this case, the shareholders were pursued in their own names to pay a fine from their personal assets because of their own misdeeds. Absent individual liability, there would have been no claim for individual double jeopardy.